UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

BERT SMITH OLDSMOBILE, INC.,

Plaintiff,

vs.                                                                Case No. 8:04-CV-2666-T-27EAJ

GENERAL MOTORS CORPORATION,

Defendant.
_____/

## ORDER

**BEFORE THE COURT** are Defendant's Motion to Dismiss the Complaint (Dkt. 8), Defendant's Memorandum in Support (Dkt. 9), Plaintiff's Response (Dkt. 13), and Defendant's Reply (Dkt. 21).

### Factual Background

Plaintiff, Bert Smith Oldsmobile, Inc., is an Oldsmobile dealership in St. Petersburg, Florida. (Dkt. 1, ¶ 1). Defendant, General Motors Corporation ("GM"), is a manufacturer and distributor of Oldsmobiles with its principal place of business in Detroit, Michigan. (Dkt. 1, ¶ 2). Over the years, Plaintiff and GM have been parties to a Dealer Sales and Service Agreement ("Dealer Agreement"), under which they conduct their relationship, and which they have renewed over the years. (Dkt. 1, ¶ 10). The Dealer Agreement provides, *inter alia*, specific circumstances for termination of the agreement and that the agreement is to be construed under Michigan law. (Dkt. 1, ¶ 10).

The current Dealer Agreement was executed on November 1, 2000 and expires on October 31, 2005. (Dkt. 1, ¶ 10). On December 12, 2000, GM notified Plaintiff of its intent to phase out its Oldsmobile division and products "over the next several years." (Dkt. 1, ¶ 6 and Ex. B). On

October 27, 2004, GM notified Plaintiff of its intent not to renew the Dealer Agreement after its October 31, 2005 expiration. (Dkt. 1, ¶ 7 and Ex. A).

Plaintiff filed suit against GM, alleging violations of Florida's motor vehicle franchise statutes (FLA. STAT. §§ 320.60 - 320.70) (Count I), breach of contract (Count II), and breach of implied covenant of good faith and fair dealing (Count III).[1] (Dkt. 1). GM has moved to dismiss pursuant to Rule 12(b)(6), contending that Plaintiff's Complaint fails to state a claim upon which relief can be granted. (Dkts. 8 and 9). In response, Plaintiff contends that GM's decision to phase out its Oldsmobile line renders its dealership worthless and constitutes a *de facto* termination of the Dealer Agreement. (Dkt. 13, p. 1).

## Applicable Standards

A motion to dismiss should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) (*citations omitted*); *see also South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir. 1996). The court will accept as true all well-pleaded factual allegations and will view them in a light most favorable to the nonmoving party. *Hishon v. King &*

---

[1] In alleging that GM violated Florida's motor vehicle franchise statutes, Plaintiff seeks treble damages pursuant to FLA. STAT. § 320.697, under three theories of franchise law violation: 1) *de facto* termination; 2) unfair distribution of motor vehicles; and 3) failure to provide a supply of motor vehicles by series in reasonable quantities to Plaintiff. (Dkt. 1, ¶¶ 29-33). In claiming breach of contract, Plaintiff alleges GM breached the Dealer Agreement by: 1) failing to comply with all provisions of the Dealer Agreement, including the obligation to provide a reasonable supply of products to Plaintiff; 2) preventing Plaintiff from having the opportunity to achieve a reasonable return on its investment; and 3) terminating the Dealer Agreement on grounds not authorized by its provisions. (Dkt. 1, ¶¶ 34-38). Plaintiff claims GM breached the implied warranty of good faith and fair dealing by: 1) failing to distribute motor vehicles in a fair and equitable manner; 2) failing to comply with the renewal terms of the Dealer Agreement; 3) failing to comply with the termination provisions of the Dealer Agreement; and 4) failing to permit Plaintiff the opportunity to receive a reasonable return on its investment and to fulfill its obligations under the Dealer Agreement. (Dkt. 1, ¶¶ 39-45).

*Spalding*, 467 U.S. 69, 73 (1984). The threshold is "exceedingly low" for a complaint to survive a motion to dismiss for failure to state a claim. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 703 (11th Cir. 1985). However, conclusory allegations and unsupported conclusions of fact are not sufficient to withstand a dismissal under Rule 12(b)(6). *Jackson v. Bellsouth Telcomms.*, 372 F.3d 1250, 1262-63 (11th Cir. 2004). "[P]laintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims." *Id.* at 1263. Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## Discussion

**I.    Violations of Florida motor vehicle franchise statutes, FLA. STAT. §§ 320.60 - 320.70**

Plaintiff seeks damages pursuant to FLA. STAT. § 320.697 based on: 1) *de facto* termination; 2) unfair distribution of motor vehicles; and 3) failure to provide a supply of motor vehicles by series in reasonable quantities to Plaintiff. (Dkt. 1, ¶¶ 29-33). In its Motion, GM contends that Plaintiff's claims fail because: 1) Plaintiff has not exhausted its administrative remedies; 2) the Florida statutes apply only to actual, rather than *de facto* terminations; and 3) GM satisfied the statutory requirements for providing notice of nonrenewal. (Dkt. 8, ¶ 1). GM further asserts that Plaintiff's claims of violations of Florida statutes based on unfair motor vehicle distribution and failure to supply vehicles in reasonable quantities must be dismissed because they are based on an erroneous interpretation of the statutes and are not supported by facts. (Dkt. 8, ¶ 2).

1.   **Failure to exhaust administrative remedies**

GM contends that Count I should be dismissed because Plaintiff failed to exhaust administrative remedies prior to filing suit. GM's contention is without merit.

Florida courts have interpreted Chapter 320 as authorizing administrative and judicial actions as alternative and cumulative remedies. *Barry Cook Ford, Inc. v. Ford Motor Co.*, 616 So. 2d 512, 516-17 (Fla. 1st DCA 1993).[2] Dealers may resort to their administrative remedies pursuant to § 320.641(3) and "may also base a cause of action for damages pursuant to section 320.697(7) . . .." for threatened unfair cancellation or non renewal and a dealer is not required to exhaust administrative remedies before filing suit. *Id.*

Additionally, it is well established under Florida law that exhaustion of administrative remedies is not required if it is clear that pursuit of such remedies would be to no avail. *Southern Bell Tel. & Tel. Co. v. Mobile America Corp.*, 291 So. 2d 199, 201 (Fla. 1974). Plaintiff seeks monetary damages, which an administrative forum has no authority to award. Under these circumstances, "it cannot be seriously contended that the statute contemplates a court action for damages only after a violation has been found to exist ... in an administrative proceeding." *Barry Cook Ford, Inc.*, 616 So. 2d at 516. Accordingly, GM's Motion to Dismiss Count I for failure to exhaust administrative remedies is denied.

---

[2] FLA. STAT. § 320.641(3) provides: "Any motor vehicle dealer who receives a notice of intent to discontinue, cancel, not renew, modify, or replace may, within the 90-day notice period, file a petition or complaint for a determination of whether such action is an unfair or prohibited discontinuation, cancellation, nonrenewal, modification, or replacement."

FLA. STAT. § 320.697 provides: "Any person who has suffered pecuniary loss or who has been otherwise adversely affected because of a violation by a licensee of ss. 320.60-320.70, notwithstanding the existence of any other remedies under ss. 320.60-320.70, has a cause of action against the licensee for damages . . ."

2.   *De facto* **termination**

GM also contends that Count I must be dismissed because the dealer agreement has not been terminated. Rather, GM contends it gave the required statutory notice of its intent not to renew the Dealer Agreement at its expiration, which is not a violation of § 320.641. Notwithstanding that the parties continue to operate under the Dealer Agreement, Plaintiff contends that GM's notice of its intent not to renew constitutes a *de facto* termination of the Dealer Agreement (Dkt. 1, p. 9, ¶¶ 25, 31).

*De facto* or constructive termination "applies where one party unilaterally modifies the terms" of a contractual relationship in a manner that "substantially interferes with the other party's ability to obtain the benefits of the contract." *Banc One Fin. Servs., Inc. v. Advanta Mortgage Corp. USA*, No. 00 C 8027, 2002 WL 88154, at *10 (N.D. Ill. Jan. 23, 2002) (*citing Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1183 (2d Cir. 1995)).

Here, accepting Plaintiff's allegations as true, there has not been a *de facto* termination of the Dealer Agreement. Plaintiff has alleged no facts establishing that GM has unilaterally modified the terms of the Dealer Agreement in a manner that has substantially interfered with Plaintiff's ability to obtain the benefits of the agreement. The parties continue to perform under the Dealer Agreement, even during the pendency of this lawsuit.[3]

Further, GM did not initiate a *de facto* termination of the agreement by giving notice of its intention not to renew at the natural expiration of the Dealer Agreement. FLA. STAT. § 320.641(1)(a)

---

[3] Plaintiff's allegations in ¶¶ 8, 14, 28 of the Complaint that GM's actions have left Plaintiff with "virtually no marketable product to sell", that GM has reduced "Plaintiff's array of marketable models" to the point of rendering Oldsmobiles "virtually unmarketable" and imposed unreasonable net working capital requirements "in light of GM's decision to terminate its Oldsmobile brand" are more properly addressed with respect to the sufficiency of Plaintiff's Breach of Contract claim in Count II.

provides:

> An applicant or licensee shall give written notice to the motor vehicle dealer and the department of the licensee's intention to discontinue, cancel, or fail to renew a franchise agreement ..., which modification or replacement will adversely alter the rights or obligations of a motor vehicle dealer under an existing franchise agreement or will substantially impair the sales, service obligations, or investment of the motor vehicle dealer, at least 90 days before the effective date thereof, together with the specific grounds for such action.

*See also Cabriolet Porsche Audi, Inc. v. American Honda Motor Co.*, 773 F.2d 1193, 1214 (11th Cir. 1985). Section 320.641(1)(a) does not preclude discontinuation, cancellation or nonrenewal of franchise agreements. It merely requires manufacturers to provide at least ninety days notice of nonrenewal to dealers. GM has provided Plaintiff with the required notice of nonrenewal in accordance with § 320.641(1)(a). The facts as alleged in the Complaint do not state a claim of *de facto* termination in violation of Florida law. Accordingly, GM's Motion to Dismiss Count I on its theory of *de facto* termination is granted.

    **3.**     **Unfair distribution of motor vehicles and failure to provide a supply of motor vehicles by series in reasonable quantities**

FLA. STAT. § 320.64(18) provides that a manufacturer is prohibited from establishing or implementing "a system of motor vehicle allocation or distribution ... to one or more of its franchised motor vehicle dealers which is unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of the affected motor vehicles dealer or dealers." Plaintiff claims that GM has violated § 320.64(18) "by its elimination of Oldsmobile models, by its transfer of Oldsmobile models to other GM Brands, by cessation of the research and development of Oldsmobile models, all in open discrimination against Oldsmobile dealers and Plaintiff." (Dkt. 1, ¶ 31(b)). Plaintiff asserts that it, as well as all other Oldsmobile dealers, is being discriminated against as compared to dealers of other GM models as a result of GM's decision to

discontinue the Oldsmobile line and GM's increased allocation of other GM models. *Id.* Plaintiff's reliance on § 320.64(18) is misplaced.

The Dealer Agreement is limited to the sale of Oldsmobile vehicles and does not pertain to other GM models. Accordingly, Plaintiff is not protected by § 320.64(18) as it relates to a comparison between GM's distribution of Oldsmobiles and other GM models. Rather, § 320.64(18) protects Plaintiff from unfair, inequitable, and unreasonably discriminatory distribution or allocation as compared to other Oldsmobile dealers. Additionally, and significantly, § 320.64(18) does not prohibit a manufacturer from discontinuing or transferring series or models or from ceasing research and development of series or models, the factual basis of Plaintiff's claim. (Dkt. 1, ¶ 31(b)).

In support of its claim made pursuant to § 320.64(19), Plaintiff alleges that it "has not and does not receive sufficient series or numbers of vehicles within a series to remotely satisfy the sales requirements imposed" by GM. (Dkt. 1, ¶ 31(c)). FLA. STAT. § 320.64(19) provides that a manufacturer is prohibited from delaying, refusing or failing, "without good and fair cause," "to provide a supply of motor vehicles by series in reasonable quantities."

Although Plaintiff's conclusory allegation in support of its claim of violation of § 320.64(19) arguably meets the literal statutory prohibition, the Complaint is devoid of any facts to support the absence of "good and fair cause" on the part of GM, as expressly required by § 320.64(19). In this case, merely alleging in conclusory fashion that GM acted "without good and fair cause" is insufficient. Conclusory allegations and unsupported conclusions of fact are not sufficient to withstand dismissal under Rule 12(b)(6). *Jackson*, 372 F.3d at 1262-63. Plaintiff has failed to allege sufficient factual support for its claims under §§ 320.64 (19).

Accordingly, GM's Motion to Dismiss Count I is granted.[4]

---

[4] Plaintiff has not attempted to plead a cause of action pursuant to § 320.641(3) for threatened unfair failure to renew.

7

## II.   Breach of Contract

In its breach of contract claim, Plaintiff alleges GM breached the Dealer Agreement by: 1) failing to comply with all provisions of the Dealer Agreement, including the obligation to provide a reasonable supply of products to Plaintiff; 2) preventing Plaintiff from having the opportunity to achieve a reasonable return on its investment; and 3) terminating the Dealer Agreement on grounds not authorized by its provisions.[5] (Dkt. 1, ¶¶ 34-38). GM contends that Count II fails to state a claim for breach of the Dealer Agreement.

The Dealer Agreement is "governed by the laws of the State of Michigan." (Dkt. 1, Ex. C, § 17.12). Under Michigan law, a claim for breach of contract accrues when the promissor fails to perform under the contract. *Cordova Chem. Co. v. Dept. of Natural Res.*, 536 N.W.2d 860, 865 (Mich. Ct. App. 1995).

### 1.   Reasonable supply of products

Plaintiff alleges that GM breached the Dealer Agreement by failing to provide it with a reasonable supply of motor vehicles. (Dkt. 1, ¶¶ 36-37). Sections 6.1 and 6.4.1 of the Dealer Agreement obligate GM to provide each Oldsmobile dealer with a reasonable supply of vehicles.[6] In § 6.4.1, GM expressly agrees "to make available" vehicles "in quantities adequate to enable

---

[5] Factually, Plaintiff alleges that GM's actions have left Plaintiff with "virtually no marketable product to sell"(Dkt. 1, ¶ 8), that GM has reduced "Plaintiff's array of marketable models" to the point of rendering Oldsmobiles "virtually unmarketable" (Dkt. 1, ¶ 14) and imposed unreasonable net working capital requirements "in light of GM's decision to terminate its Oldsmobile brand" (Dkt. 1, ¶ 28).

[6] Section 6.1 provides, in pertinent part: "General Motors will endeavor to distribute new Motor Vehicles among its dealers in a fair and equitable manner." Section 6.4.1 provides, in pertinent part: "Dealer agrees to purchase and stock and General Motors agrees to make available, subject to Article 6.1, a mix of models and series of Motor Vehicles identified in the Motor Vehicles Addendum in quantities adequate to enable Dealer to fulfill its obligations in the Area of Primary Responsibility." (Dkt. 1, Ex. C, §§ 6.1 and 6.4.1).

Dealer to fulfill its obligations in its Area of Primary Responsibility." In its Complaint, Plaintiff alleges that GM failed to do just that. (Dkt. 1, ¶ 14) In light of these allegations, GM's argument that Plaintiff fails to plead sufficient facts is without merit, given the pleading requirements of Rule 8, Fed. R. Civ. P. Viewed in the light most favorable to Plaintiff, these allegations are sufficient to state a claim of breach of Sections 6.1 and 6.4.1 of the Dealer Agreement. *See* Rule 8, Fed. R. Civ. P.; *Conley*, 355 U.S. at 47.

### 2.   Reasonable Return on Investment

In paragraph 14 of its Complaint, Plaintiff alleges that "[t]he Sales and Service Agreement provides that GM is obligated 'to permit each dealer [including Plaintiff] the opportunity to achieve a reasonable return on investment if it fulfills its obligations under its Sales and Service Agreement'" (*citing* Dkt. 1, Ex. C, § 4.1). (Dkt.1, ¶ 14). In paragraph 37, Plaintiff alleges that GM's plan to discontinue the Oldsmobile line has resulted in its inability to "realize its opportunity to achieve a reasonable return on its investment." (Dkt. 1, ¶ 37).

GM essentially contends that Plaintiff's allegations misconstrue § 4.1. GM argues that if § 4.1 imposes any obligation, that obligation falls on the dealer, consistent with the plain language of § 4.1. GM contends that even if § 4.1 imposes some duty on GM, by its express terms, GM is only obligated to "monitor marketing conditions and strive, to the extent practicable, to have dealers appropriate in number, size and location to achieve the objectives stated above."

The relevant provision of the Dealer Agreement, Section 4.1, provides that GM distributes "through a network of authorized dealers operating from approved locations" who "must be appropriate in number, located properly, and have proper facilities to represent and service General Motors Products competitively and to permit each dealer the opportunity to achieve a reasonable

return on investment if it fulfills its obligations under its Dealer Agreement." (Dkt. 1, Ex. C, § 4.1). In response to GM's argument, Plaintiff contends that GM "has done much more than merely modify" the geographic distribution of its dealers; instead, it has "eliminated" Plaintiff's dealership "altogether by rendering it worthless." (Dkt. 13, pp. 1, 9).

As the parties share conflicting interpretations of § 4.1, Count II will not be dismissed, to the extent it is premised on a breach of § 4.1. *See Davis v. Kramer Bros. Freight Lines, Inc.*, 105 N.W.2d 29, 32 (Mich. 1960); *Andrews Oldsmobile Datsun, Inc. v. General Motors Corp.*, 8:02-CV-1715-T-27MSS (M.D. Fla.) (Dkt. 14 at p. 7).

### 3. Termination

Plaintiff alleges that GM breached the Dealer Agreement by terminating it on grounds not authorized by the agreement. (Dkt. 1, ¶ 37). In support, Plaintiff alleges that the grounds for termination enumerated in Article 14 of the Dealer Agreement do not include the discontinuation of a vehicle model.[7] (Dkt. 1, ¶ 12). GM contends that this theory underlying Plaintiff's breach of contract claim fails because there has been no actual breach of the Dealer Agreement, only an anticipated breach. GM is correct. Even construing Plaintiff's allegations in a light most favorable to Plaintiff and assuming all factual allegations to be true, it is without dispute that the agreement has not been terminated.

Plaintiff also alleges that the Dealer Agreement "assures Plaintiff an opportunity to enter into

---

[7] In its Complaint, Plaintiff alleges that franchise agreements are "perpetual unless terminated in accordance with the law." (Dkt. 1, ¶ 12). Plaintiff provides no legal authority for this statement. Pursuant to FLA. STAT. § 320.641(2), "[f]ranchise agreements are deemed to be *continuing* unless the applicant or licensee has notified the department of the discontinuation of, cancellation of, failure to renew, modification of, or replacement of the agreement of any of its motor vehicle dealers ...." (*Emphasis added.*) This section of the statute refers to a notice requirement on the part of the manufacturer when changes are made to the franchise agreement, not to the continuation of contracts in perpetuity.

10

a new agreement at the expiration date if GM determines that dealer has fulfilled its obligations under this agreements(s)". Plaintiff relies on that part of the Dealer Agreement which provides that the Dealer is "assured of an opportunity to enter into a new Agreement(s) at the expiration date if General Motors determines that Dealer has fulfilled its obligations under this Agreement(s)." (Dkt. 1, ¶ 13, Ex. C). Plaintiff alleges that GM's notice of intent not to renew constitutes a breach of this provision. GM correctly contends that this is a claim for anticipatory breach, which Michigan law does not recognize so long as Plaintiff treats the Dealer Agreement as valid. (Dkt. 8, ¶ 4).

Pursuant to Michigan law, the doctrine of anticipatory breach applies if a party to a contract, prior to the time for performance, unequivocally declares an intent not to perform. *A&E Holdings, Inc. v. Consumers Petroleum Profit Sharing Trust*, No. 242777, 2003 WL 550027, at *6 (Mich. Ct. App. Feb. 25, 2003). In such a situation, "the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance." *Paul v. Bogle*, 484 N.W.2d 728, 735 (Mich. Ct. App. 1992). In order to enable a party "to sue on such an anticipatory breach, he must accept it as such, and consider the contract at an end." *Hettrick Mfg. Co. v. Waxahachie Cotton Mills*, 1 F.2d 913, 919 (6th Cir. 1924).

Here, Plaintiff does not allege that GM has refused to perform under the terms of the Dealer Agreement. It is undisputed that Plaintiff and GM continue to operate under the Dealer Agreement. Plaintiff cannot acknowledge in its Complaint that the Dealer Agreement remains in effect and at the same time allege that the agreement has been breached. Accordingly, GM's Motion to Dismiss Count II, to the extent that Plaintiff attempts to plead a cause of action for anticipatory breach, is granted. *See Marshall County Bd. of Educ.*, 992 F.2d at 1174 (a court may dismiss a complaint or claim on a dispositive issue of law).

### III. Breach of Implied Covenant of Good Faith and Fair Dealing

Plaintiff's claim for breach of implied covenant of good faith and fair dealing in Count III is based on GM's alleged failure to: 1) distribute motor vehicles in a fair and equitable manner; 2) comply with the renewal terms of the Dealer Agreement; 3) comply with the termination provisions of the Dealer Agreement; and 4) permit Plaintiff the opportunity to receive a reasonable return on its investment and to fulfill its obligations under the Dealer Agreement. (Dkt. 1, ¶¶ 39-45).

GM asserts that Count III fails because the covenant of good faith and fair dealing is not implied where parties to a contract have expressly set forth their obligations. (Dkt. 8, ¶ 6). GM is correct in that, generally, under Michigan law, an implied covenant of good faith and fair dealing does not override the express terms of a contract and cannot form the basis for a claim independent of that contract. *Clark Bros. Sales Co. v. Dana Corp.*, 77 F. Supp. 2d 837, 852 (E.D. Mich. 1999). For this reason, Michigan law does not recognize an independent action for alleged breach of a contract's implied covenant of good faith and fair dealing. *Ulrich v. Fed. Land Bank of St. Paul*, 480 N.W.2d 910, 911 (Mich. Ct. App. 1991). However, "Michigan courts will recognize an action for breach of an implied covenant of good faith and fair dealing where a party makes the manner of its performance a matter of its own discretion." *Verderese v. Q Lube, Inc.*, No. 199084, 1998 WL 1991608, at *4 (Mich. Ct. App. May 26, 1998); *see also Hubbard Chevrolet Co. v. General Motors Corp.*, 873 F.2d 873, 876-77 (5th Cir. 1989); *Burkhardt v. City of Nat'l Bank of Detroit*, 226 N.W.2d 678, 680 (Mich. Ct. App. 1975) ("[w]here a party to a contract makes the manner of its performance a matter of its own discretion, the law does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith").

A significant amount of discretion is reserved to GM under the Dealer Agreement, including

the discretion to allocate and distribute vehicles among its dealers, to renew dealer agreements and to terminate or not renew dealer agreements. (Dkt. 1, Ex. C, §§ 4.2, 4.3, 6.1, Articles 14 and 15). Although GM does not acknowledge its contractual discretion for purposes of this claim, its discretion under the contract gives rise to a covenant of good faith.[8] *See Verderese*, 1998 WL 1991608, at *4. As an implied covenant of good faith and fair dealing may be implied in contracts that allow for discretion, Count III states a claim. Accordingly, GM's Motion to Dismiss Count III is denied.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1) Defendant's Motion to Dismiss (Dkt. 8) Count I is **GRANTED**.

2) Defendant's Motion to Dismiss (Dkt. 8) Count II is **GRANTED** *in part*. Plaintiff's claim that the dealer agreement has been wrongfully terminated and that Defendant has breached by giving notice of its intent not to renew are dismissed, without prejudice. Defendant's Motion to Dismiss Count II is otherwise **DENIED.**

3) Defendant's Motion to Dismiss Count III is **DENIED.**

**DONE AND ORDERED** in chambers this 18th day of May, 2005.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record

---

[8] In defending against Plaintiff's other claims, GM argues that the Dealer Agreement gives it discretion in carrying out the covenants Plaintiff claims have been breached.

13